1
2
3
4
5
6
7
8

David J. Feldman, Esq.
Nevada Bar No. 5947
Rachel J. Holzer, Esq.
Nevada Bar No. 11604
THE FELDMAN FIRM
8831 West Sahara Avenue
Las Vegas, Nevada 89117
Telephone:  (702) 949-5096
Facsimile:  (702) 949-5097
dfeldman@feldmanattorneys.com
rholzer@feldmanattorneys.com
*Attorneys for Defendant Acuity A Mutual*
*Insurance Company*

9

**UNITED STATES DISTRICT COURT**

10

**DISTRICT OF NEVADA**

11
12
13
14
15
16
17
18

ESTEVAN ALVARADO-HERRERA, an
individual,

    Plaintiff,

  vs.

ACUITY A MUTUAL INSURANCE
COMPANY, a Wisconsin corporation; and
DOES I through XX, inclusive,

    Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.: 2:22-cv-00438-CDS-NJK

**DEFENDANT ACUITY A
MUTUAL INSURANCE
COMPANY'S MOTION TO
COMPEL RULE 35
EXAMINATION OF PLAINTIFF
AND PRODUCTION OF RAW
DATA FROM PRIOR
EXAMINATION**

19
20
21
22
23
24
25
26
27
28

   Defendant Acuity A Mutual Insurance Company, by and through its attorneys of record,

David J. Feldman, Esq. and Rachel J. Holzer, Esq. of the Feldman Firm, respectfully submits this

motion to compel the Federal Rule of Civil Procedure ("Rule") 35 examination of Plaintiff Estevan

Alvarado-Herrera and the production of the raw data from the Rule 35 examination Alvarado's

vocational rehabilitation expert performed.

   This Motion is made and based on the papers and pleadings on file herein, the following

Memorandum of Points and Authorities, the attached exhibits, including counsel's declaration

pursuant to Local Rule 26-6(c) (**Exhibit A**), and any oral argument this Court may entertain at the

1

time of hearing this matter.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

This breach of contract and insurance bad faith case stems from a January 30, 2017 vehicular accident that Plaintiff Estevan Alvarado-Herrera claims caused him to injure his back and left knee.  Mr. Alvarado claims that, as a result of the subject accident, he incurred current and future medical special damages of nearly **$2,500,000.00**, as well as $120,000.00 in current lost wages and $369,728.00 in future lost earning capacity. Mr. Alvarado's claimed injuries in this case were also the subject of the underlying personal injury action that Mr. Alvarado commenced against the tortfeasors, which resulted in him receiving nearly $2,000,000.00 in liability policy benefits from the tortfeasors' insurers.

This case is complicated by a roll-over accident Mr. Alvarado was involved in only 10 days before the subject accident, his history of past motor vehicle accidents, and the degenerative condition of his back and left knee. Accordingly, significant discovery must be conducted regarding Mr. Alvarado's past injuries and accidents, his physical condition pre-dating the subject accident, and, most relevant to this Motion, his ability to work in the future.

Unfortunately, discovery in this case continues to be stalled by Alvarado's bad faith litigation conduct.[1] Although Alvarado claims his medical treatment is ongoing and his underlying personal injury case was resolved more than a year ago, according to Alvarado, Acuity is bound and limited by the discovery it did or did not do in that case against the tortfeasors. Specific to this Motion, Alvarado asserts Acuity not having requested a Rule 35 examination of Alvarado by a vocational rehabilitation expert in the underlying case (in which Acuity intervened but no claims were brought against Acuity)  forecloses Acuity's ability to conduct this discovery in this case.

---

[1] Alvarado has refused to take part in discovery since it commenced. He first refused to answer written discovery requests on the grounds he provided the same information during the claims handling process and/or in the underlying case. His refusal to provide discovery responses was the subject of a prior motion to compel (ECF No. 18.) It was not until after the motion to compel was filed that Alvarado agreed to provide supplemental discovery responses.

Alvarado also disputes that he placed his injuries and his ability to work in issue in this case, despite his Complaint stating that he seeks $7 million in damages for his bodily injuries, which have impacted his ability to work and will continue to do so in the future  (ECF No. 1-2, Pl.'s Compl., at ¶ 10, 3:17-26), and despite his disclosure of damages *in this case* that include $120,000.00 in past lost wages and $369,728.00 in future lost earning capacity (**Exhibit B**, Pl.'s Init.'l Discls., at 22:12-16).

Alvarado's contention is belied by Rule 35 and the well established case law regarding its application. *See, e.g.*, *Victor v. Walmart, Inc*., No. 220CV01591JCMNJK, 2021 WL 3745190, at *4 (D. Nev. Apr. 8, 2021)(Mag. N. Koppe)(finding plaintiff put her physical injury in controversy by suing upon thereby providing defendant with good cause for a Rule 35 examination)(quoting *Schlagenhauf v. Holder*, 379 U.S. 104, 119, 85 S. Ct. 234, 243 (1964)(pleadings alone may be sufficient to provide good cause for a Rule 35 examination where the plaintiff places her injury in controversy); *Buononato v. Sam's W., Inc*., No. 219CV01221RFBNJK, 2020 WL 10147129, at *2 (D. Nev. Nov. 18, 2020)(Mag. N. Koppe)(same); *Painter v. Atwood*, No. 2:12-CV-01215-JCM, 2013 WL 5428059, at *2 (D. Nev. Sept. 26, 2013)(granting defendant's motion to compel psychological examination because "Defendants have the right to perform their own assessment, because one of the purposes of Rule 35 is to level the playing field in cases where physical or mental condition is at issue, because '[a] plaintiff has ample opportunity for psychiatric or mental examination by his/her own practitioner or forensic expert.'")(internal quotation omitted). Accordingly, Acuity respectfully requests this Court's assistance in obtaining a Rule 35 examination of Mr. Alvarado, including an interview with Acuity's retained vocational rehabilitation expert and potentially some testing to follow, which will not likely exceed two hours. Acuity also requests this Court order Alvarado's vocational rehabilitation expert, Carol Hyland,  to transmit to Acuity's expert, Robert Taylor, the raw data from the administration of the vocational testing she administered so that Mr. Taylor may interpret the data himself and assess Ms. Hyland's methodology as it relates to her conclusions.

Additionally, it must be clarified that Alvarado did not take issue with the expert Acuity

retained to perform the interview and testing or with the parameters of the interview or the test. Rather, Alvarado contends Acuity is barred from this discovery because Acuity did not request such discovery in the underlying case.

## II.   RELEVANT FACTUAL AND PROCEDURAL HISTORY

### A.    General Facts Regarding This Litigation

Alvarado brings this insurance bad faith case against Acuity, the insurer that issued a commercial automotive policy to Alvarado's former employer Sierra Air Conditioning. Alvarado alleges that on January 30, 2017, he was injured while at work, when he was retrieving some items from a transit van and the non-party tortfeasor turned his truck and trailer too tightly, coming into contact with door of the transit van and causing it to close on Alvarado's body. Alvarado made claims to Sierra Air's workers compensation carrier, the tortfeasor's insurance carrier, and he notified Acuity that he may have a claim for underinsured motorist ("UIM") benefits under Sierra Air's commercial auto policy.

On January 14, 2019, Alvarado sued the tortfeasors and his employer for the injuries Alvarado suffered in Eighth Judicial District Court, Case No. A-19-787456-C (the "underlying case"). Acuity intervened in the underlying case to monitor it, as, in Nevada, a lack of intervention could result in Acuity being bound by a default judgment against one of the named defendants. *Est. of Lomastro ex rel. Lomastro v. Am. Fam. Ins. Grp*., 124 Nev. 1060, 1067, 195 P.3d 339, 344 (2008) ("In Nevada, an insurance company 'is bound by the result of an action between its insured and an uninsured motorist when the carrier has notice of the action but elects not to intervene.'")(quoting State Farm Mut. Auto. Ins. v. Wharton, 88 Nev. 183, 187 n. 7, 495 P.2d 359, 362 n. 7 (1972) (citing *State Farm Mut. Auto. v. Christensen*, 88 Nev. 160, 494 P.2d 552 (1972)).

During the underlying case, Alvarado's prior vehicular accidents came to light, including a roll-over accident that occurred just 10 days before the subject accident, for which Alvarado sought emergency treatment. Alvarado's claimed injuries were also called into question by defense experts and by his own workers compensation doctor, who believes this is a case of medical buildup. Alvarado's films support this conclusion. Although Acuity joined in the tortfeasors'

retention of an orthopedic/neurosurgeon expert, Dr. Jeffrey Wang, Acuity did not engage in substantial discovery or retain a vocational rehabilitation expert, as there were no claims against Acuity and it was solely intervening to protect its interests.

Ultimately, the tortfeasors settled with Alvarado, who received nearly $2,000,000.00 from the tortfeasors' insurers. Acuity withdrew its intervention, and the underlying case was dismissed.

On February 8, 2022, Alvarado filed suit against Acuity in the Eighth Judicial District Court, asserting claims for: 1) Breach of Contract (seeking UIM benefits under the Policy); (2) Unfair Insurance Practices (for violations of NRS 687B.145(2) and NRS 686A.310); and (3) Tortious Breach of the Implied Covenant of Good Faith and Fair Dealing ("Bad Faith"). Acuity subsequently removed the case to this Court based on diversity jurisdiction.

Plaintiff's Complaint places his physical health and ability to work in controversy by alleging:

> As a direct and proximate result of the Accident, Plaintiff suffered significant bodily injuries, including several severe physical injuries, proximately causing past and future general and special damages, including but not limited to: pain and suffering; emotional anxiety and distress; loss of enjoyment of life; medical treatment, including invasive surgical procedures and associated medical expenses; the need for future medical treatment, including invasive surgical procedures and associated medical expenses; **past lost wages, loss of future earnings and earning capacity**; loss of household services; and other incident expenses and damages; with said past and future general and special damages in an amount in excess of SEVEN MILLION DOLLARS ($7,000,000.00).

(ECF No. 1-2, Pl.'s Compl., at ¶ 10, 3:17-26 (bold emphasis added).)

These damages also form the bases of Alvarado's contractual and extra-contractual claims. (*Id.*, at ¶¶ 15, 101-103, 123.)

On March 18, 2022, Alvarado served Acuity his Initial Disclosure pursuant to Rule 26(a)(1), Rule 26(a)(3), and Local Rule 26-1, which disclosed his damages, including:

1.    $494,254.07 in past medical special damages;

2.    $1,469,434.00 in future medical special damages;

3.    $120,000 in past lost wages; and

4.    $369,728.00 in future lost earning capacity.

(**Exhibit B**, Pl.'s Init.'l Discls., at 21-22.)

Alvarado's disclosures also clarified that: "Plaintiff intends to seek damages for future vocational rehabilitation or retraining, at an amount to be determined during the course of discovery and to be supplemented at a later date, or at the time of trial." (*Id.*, at 22:17-19.) To that end, Alvarado's disclosure included a report prepared by his designated vocational rehabilitation expert, Carol Hyland (**Exhibit C**).

**B.    Facts Regarding this Discovery Dispute**

Since discovery commenced, Alvarado has taken the position that Acuity is not entitled to conduct any discovery in this case because: (1) Alvarado provided all the sought after documents and information Acuity requested in the underlying case or during the claim handling process (*see, e.g.,* ECF No. 18-3, Pl.'s Resp. To Interrog. No. 7, at 7:19-8:11) ; and (2) Acuity waived the right to conduct discovery in this case that it did not pursue in the underlying case against the tortfeasors (*see* Exhibit A, Decl. Counsel).

As explained in the Declaration of Counsel, the allegations in Alvarado's Complaint and the damages he enumerated in his Initial Disclosure place Alvarado's health in controversy. Thus, Acuity requested Alvarado submit to an interview with Acuity's retained vocational rehabilitation expert, Robert Taylor, and potentially an online test to be administered by Mr. Taylor. Acuity also requested the raw data from the tests Alvarado's vocational rehabilitation expert, Carol Hyland, administered to him be sent to Mr. Taylor. Alvarado rebuffed these requests. The following is the chronology of the discovery dispute as memorialized in the correspondence between counsel and in the Declaration of Counsel.

On August 2, 2022, Acuity's counsel sent Alvarado's counsel correspondence requesting an interview with Acuity's expert, Mr. Taylor, and possible testing, to be conducted on August 16, August 17, or August 23, 2022, with a start time between 9:00 a.m and 10:00 a.m PST. (**Exhibit D**, Aug. 2, 2022 Corr. D. Feldman to T. Anderson.) The correspondence clarified the interview would take about 2 hours, and, if Mr. Taylor determined vocational testing is necessary, online testing would take place immediately after the interview and would take about 2.5 hours. (*Id.*) The

correspondence also clarified the interview and testing could take place on another date in August, 2022, should Alvarado be unavailable on the dates provided.

On August 9, 2022, Plaintiff's counsel responded to Acuity's counsel's correspondence asserting their position that Acuity is not entitled to conduct any discovery that Acuity took part in during the underlying case or that Acuity had the opportunity to conduct in the underlying case, but did not. (**Exhibit E**, Aug. 9, 2022 Corr. S. Jaffe and T. Anderson to D. Feldman and R. Holzer.) As support for counsel's decision declining to allow Alvarado to submit to an interview with Acuity's vocational rehabilitation expert, Alvarado's counsel pointed only to Acuity's March 21, 2021 correspondence sent to Alvarado during the claims handling process regarding the additional information Acuity required, as well as statements made by Acuity's counsel at two hearings in the underlying litigation regarding Acuity's decision on Alvarado's claim. (*Id*., at 1-2.) Finally, Alvarado communicated his refusal to participate in essentially any discovery in this case, as follows:

> To the extent Acuity intends to ask for further similar discovery, such as a Rule 35 Examination or a second deposition of Plaintiff, please make those requests now so that we can have the Court decide this issue at one time, rather than by piecemeal. We intend to seek requests.

(*Id*., at 3.)

Despite Alvarado's asserted intention, he has not filed a motion for protective order.

On August 16, 2022, Acuity's counsel responded to Plaintiff's counsel's correspondence "declining" to allow Alvarado to take part in an interview with Acuity's retained vocational rehabilitation expert in this case.  (**Exhibit F**, Aug. 16, 2022 Corr. D. Feldman to S. Jaffe and T. Anderson). The correspondence explained that Alvarado has put his health and his capacity to work in issue in this case thereby providing good cause for a Rule 35 examination with a vocational rehabilitation expert and that this Court has counseled that parties are not absolved of their discovery duties because information may have been provided in the underlying case (though in this case no vocational rehabilitation expert examination took place in the underlying case). (*See*, *id*.)

A substantial amount of case law was provided to Alvarado's counsel supporting Acuity's

position. (*See, id.*, at pp. 2-3.) The correspondence also set a date and time to meet and confer on the subject, August 23, 2022.

On August 19, 2022, Acuity's counsel sent follow up correspondence to Alvarado's counsel requesting Alvarado's vocational rehabilitation expert, Carol Hyland, provide the raw testing data from the tests she administered to Alvarado to Acuity's expert, Mr. Taylor.  (**Exhibit G**, Aug. 19, 2022 Corr. D. Feldman to S. Jaffe and T. Anderson). The correspondence also explained that the production of this data and extending the discovery deadlines would be additional topics of conversation during the August 23, 2022 meet and confer between counsel. (*Id.*)

As set forth in the Declaration of Counsel (Exhibit A), on August 23, 2022, counsel took part in a meet and confer regarding the topics above, with Rachel Holzer, Esq. representing Acuity and Steve Jaffe, Esq., Taylor Anderson, Esq., and John Shannon, Esq. representing Alvarado. During the meet and confer counsel discussed the topics outlined in the correspondence enumerated above. Alvarado's counsel asserted their position that Alvarado did not put his health in issue in this litigation because this a breach of contract/bad faith case, unlike the underling negligence case against the tortfeasors. Counsel then reasserted their position that Alvarado is not required to provide a Rule 35 examination or the data from his prior vocational rehabilitation testing, as Acuity had the opportunity to do this discovery in the underlying case and it did not do it.

According to Alvarado's counsel,  Alvarado's submission to the requested discovery in this case would be giving Acuity a "second bite at the apple." In response, Acuity's counsel pointed to allegations in Alvarado's Complaint, which are cited herein, that put Alvarado's health and capacity to work in controversy, thereby satisfying the good cause requirement for granting a motion to compel a Rule 35 examination. Acuity's counsel also pointed out that Acuity is entitled to conduct discovery in this case, which, unlike the underlying case, includes claims against Acuity, and that this Court has found the same in other cases. Alvarado's counsel stated they reviewed the case law Acuity provided (and, in fact, reviewed one case during the call), and they disagree with Acuity's position.

However, all parties agreed that an extension in the current discovery deadlines is required

given the instant discovery dispute, which impacts the September 7, 2022 initial expert disclosure deadline, and the dispute over documents Acuity withheld on the ground of attorney-client privilege, which is the subject of a pending motion (ECF No. 23, Pl.'s Mot. for Ord. Compelling Critical Claim Evaluation Docs. Acuity Withheld). A stipulation will be provided for the Court's approval shortly.

### III.   LEGAL ARGUMENT

**A.     Legal Authority: Compelling Rule 35 Examination of a Party**

Rule 35 allows the court where the action is pending, upon a motion and for good cause, "to order a party whose mental or physical condition is in controversy to submit to a physical or mental examination by a suitably licensed examiner." Fed. R. Civ. P. 35(a)(1)-(2)(A). Where, as here, the plaintiff puts his physical injury in controversy, the pleadings alone may suffice to meet Rule 35's good cause and controversy requirements. *See Schlagenhauf v. Holder*, 379 U.S. 104, 119, 85 S. Ct. 234, 243 (1964); *see also Buononato v. Sam's W., Inc*., No. 219CV01221RFBNJK, 2020 WL 10147129, at *2 (D. Nev. Nov. 18, 2020)(Mag. N. Koppe)(quoting *Schlagenhauf* , *supra*, and explaining the plaintiff put his physical injury in question by alleging in his complaint that "he suffered injuries requiring medical attention because of Defendant's negligence"). Rule 35 examinations are particularly necessary in cases like this one, where the plaintiff is alleging substantial and continuing damages resulting from his physical injuries. *Victor v. Walmart, Inc*., Defendant., No. 220CV01591JCMNJK, 2021 WL 3745190, at *3 (D. Nev. Apr. 8, 2021)(explaining "Plaintiff alleges that her future medical specials are $295,065. Docket No. 18-2 at 6. Denying the motion for extension would preclude Defendant from pursuing a Fed. R. Civ. P. 35 examination and challenging allegations at the heart of the instant complaint.").

As this Court has explained "[d]efendants have the right to perform their own assessment, because one of the purposes of Rule 35 is to level the playing field in cases where physical or mental condition is at issue, because '[a] plaintiff has ample opportunity for psychiatric or mental examination by his/her own practitioner or forensic expert.'" *Painter v. Atwood*, No. 2:12-CV-01215-JCM, 2013 WL 5428059, at *2 (D. Nev. Sept. 26, 2013)(Mag. N. Koppe)(citing

*Ashley v. City & Cnty. of San Francisco*, 2013 WL 2386655 (N.D.Cal. May 30, 2013), citing *Ragge v. MCA/Universal Studios*, 165 F.R.D. 605, 608 (C.D.Cal.1995)).

The trial court has broad discretion in setting the terms and conditions of a Rule 35 examination. *See, e.g., Blount v. Wake Elec. Membership Corp.*, 162 F.R.D. 102, 107 (E.D.N.C. 1993). However, "[a]s a general rule, the moving party is permitted to select the physician who will conduct the Rule 35 examination." *Pham v. Wal–Mart Stores, Inc*., 2012 WL 1957987, at *3 (D. Nev. May 29, 2012). "Though commonly referred to as an 'independent medical examination' (IME), there is nothing in the rule requiring the examiner to be 'independent' or unconnected to an adverse party." *Hernandez v. Vanveen*, 2015 WL 2165556, at *2 (D. Nev. May 8, 2015). Often Rule 35 examinations arise "in the context of developing expert testimony for trial with the expert witnesses then subject to the discovery obligations of Rule 26 and 30. It is often, though not always, the case that a Rule 35 examiner also serves as a Rule 26 expert." *Kolas v. Wal-Mart Stores Inc*., No. 217CV01597APGNJK, 2018 WL 2271220, at *1 (D. Nev. Jan. 4, 2018)(quoting *id*.)(internal quotations and citations omitted).

In the Ninth Circuit, "Rule 35 does not require the party requesting an examination to fully describe the manner and conditions of the examination." *Buononato v. Sam's W., Inc*., No. 219CV01221RFBNJK, 2020 WL 10147129, at *2 (D. Nev. Nov. 18, 2020)(Mag. N. Koppe)(citing *Azevedo v. City of Fresno*, 2009 WL 5216877, at *3 (E.D. Cal. Dec. 30, 2019) (finding Rule 35 "does not require the moving party to describe the particular testing/procedures or the examiner's background") (citing *Kob v. Cty. of Marin*, 2009 WL 3706820, at *1 (N.D. Cal. Nov. 3, 2009)).

Alvarado, as "[t]he party seeking to avoid discovery bears the burden of showing why the discovery should not be permitted." *V5 Techs. v. Switch, Ltd.*, 334 F.R.D. 306, 309 (D. Nev. 2019)*; see also Bible v. Rio Properties, Inc*., 246 F.R.D. 614, 618 (C.D.Cal.2010) (citing *Blankenship v. Hearst Corp*., 519 F.2d 418, 429 (9th Cir.1975) (explaining the party resisting discovery has the burden of showing the discovery sought is unduly burdensome or oppressive)).

/ / /

/ / /

**B.**     **Plaintiff Put his Physical Condition and Ability to Work in Controversy; Thus, There is Good Cause to Order Him to Submit to a Rule 35 Examination.**

Contrary to Alvarado's contention, whether his claims for relief in this case sound in negligence, in contract, or whether they are extra-contractual in nature is immaterial to whether he put his physical health and capacity to work in controversy. *See, e.g., Starkey v. McHugh*, No. 14-CV-02525-PSG, 2015 WL 6438762, at *3 (N.D. Cal. Oct. 23, 2015)(finding the plaintiff in a harassment case must submit to a Rule 35 examination by a vocational rehabilitation expert because she put her ability to work in issue); *Rance v. Jefferson Vill. Condo. No. 5*, No. 18 CIV. 6923 (JCM), 2019 WL 12373336, at *3 (S.D.N.Y. Sept. 23, 2019)(finding plaintiff put her mental health in issue in FHA  discrimination case). As with a negligence claim, prevailing on his breach of contract and extra-contractual claims requires Alvarado to prove his damages. *See, e.g., State Farm Mut. Auto. Ins. Co. v. Fitts*, 120 Nev. 707, 710, 99 P.3d 1160, 1162 (2004)(explaining "first-party UM/UIM contractual benefits are based upon damages sustained in tort at the hands of a third-party driver"); *see also Pemberton v. Farmers Ins. Exch.*, 109 Nev. 789, 796, 858 P.2d 380, 384 (1993)(explaining proving bad faith requires a plaintiff to establish "legal entitlement," which has been interpreted to mean that the "insured must be able to establish fault on the part of the uninsured motorist which gives rise to the damages and to prove the extent of those damages")(internal quotations omitted).

Alvarado's Complaint alleges  he incurred and will continue to incur damages as a result of his injuries from the subject accident, including "invasive surgical procedures and associated medical expenses; past lost wages, loss of future earnings and earning capacity; loss of household services; and other incidental expenses and damages; with said past and future general and special damages in an amount in excess of SEVEN MILLION DOLLARS ($7,000,000.00)." (ECF No. 1-2, Pl.'s Compl., at ¶ 10, 3:17-26.). Alvarado's Initial Disclosure states these damages specifically include $120,000 in past lost wages and  $369,728.00 in future lost earning capacity. His Complaint confirms these damages form the basis of his breach of contract claim seeking underinsured motorist ("UIM") benefits and his bad faith claim (which requires a showing of legal entitlement).

(*Id.*, at ¶¶ 15, 101-103, 123.) Therefore, the pleadings in this case satisfy Rule 35's controversy and good cause requirements under Rule 35.

Alvarado's contention that Acuity is bound and limited by the discovery it did or did not do in the underlying case lacks any legal support whatsoever. Ninth Circuit courts have found a defendant is entitled to a Rule 35 examination of a plaintiff, when the plaintiff put his or her health in issue even when such an examination was performed in an underlying case. *See, e.g., Vario v. First Nat'l Ins. Co.*, No. C16-1900RSM, 2017 WL 3172825, at *3 (W.D. Wash. July 26, 2017)(rejecting plaintiff's argument that the defendant was not entitled to Rule 35 examination because plaintiff submitted to one in the underlying case). Allowing a Rule 35 examination in a subsequent case makes sense, as substantial time may have passed between the two cases, and the plaintiff may be in a different place in his or her recovery, and may not suffer from the same limitations he or she suffered from during the time frame of the underlying case. *Id.,* at *2 (explaining good cause exists to allow a Rule 35 examination "that addresses the current condition and future medical prognosis of [plaintiff's] physical injuries" and noting a continuing injury is one of the factors to consider in assessing whether good cause exists).

However, here, the only Rule 35 examination that ever took place was that which Alvarado's own vocation rehabilitation expert, Carol Hyland, performed. Ms. Hyland, who Alvarado disclosed as an expert in this case, opines Alvarado will be unable to return to his prior vocation, which will limit his future earning capacity. (Exhibit B, Pl.'s Init.'l Discls., at 19:12-13, listing Carol Hyland, M.A., M.S., C.L.C.P., C.D.M.S.'s Expert Report, Dated February 17, 2020; Exhibit C, Report C. Hyland, at pp. 8-9, Bates Nos. Plt 02022-23.)

Fairness dictates that Acuity receive the same opportunity for a Rule 35 examination that Alvarado availed  himself  of. *See Painter v. Atwood*, No. 2:12-CV-01215-JCM, 2013 WL 5428059, at *2 (D. Nev. Sept. 26, 2013)(Mag. N. Koppe)(explaining Rule 35 examinations level the playing field in cases where physical or mental condition is at issue, because "[a] plaintiff has ample opportunity for psychiatric or mental examination by his/her own practitioner or forensic expert."); *see also  Bridgham-Morrison v. Nat'l Gen. Assurance Co.*, Case No. C15-927RAJ, 2016

WL 231284, at *4 (W.D. Wash. Jan. 19, 2016) (explaining whether plaintiff plans to prove his claim through expert witness testimony is a factor in determining whether good cause exists)(citing *Lopez v. City of Imperial*, No. CIV. 13-0597-BEN WVG, 2014 WL 232271, at *3–4 (S.D. Cal. Jan. 21, 2014)). Indeed, Acuity would be substantially prejudiced at trial should this Court decline to order Alvarado submit to a Rule 35 examination by Acuity's expert, as there would be no way to rebut Alvarado's expert's opinions. Thus, the requested relief is necessary to level the playing field in this case. *Ragge v. MCA/Universal Studios*, 165 F.R.D. 605, 608 (C.D. Cal. 1995)(explaining one purpose of Rule 35 is to "'level the playing field' between parties in cases in which a party's physical or mental condition is in issue.").

Part and parcel of that leveling is enabling Acuity's expert to interpret the raw data from the tests Ms. Hyland performed so that he can assess her methodology as it relates to her conclusions. Alvarado has no grounds to contest the disclosure of this raw data to Mr. Taylor (not defense counsel), as it forms the basis of Ms. Hyland's opinions, and Rule 26(a)(2)(B)(ii) requires the production of "the facts or data" the expert considered in forming her opinions. *See Starkey*, No. 14-CV-02525-PSG, 2015 WL 6438762, at *2 (ordering the disclosure of raw data from Rule 35 examination)(citing *Hirschheimer v. Associated Metals & Minerals Corp.*, Case No. 94-cv-06155, 1995 WL 736901, at *5 (S.D.N.Y. Dec. 12, 1995). Therefore, Acuity additionally requests this Court order Ms. Hyland to transmit the data from the tests she performed on Alvarado to Acuity's expert, Mr. Taylor, so that Mr. Taylor can evaluate the test data himself and assess Ms. Hyland's methodology and conclusions.

Finally, Acuity has provided Alvarado with the parameters of the examination, including the examiner's identity, the time frame required by the interview and the test administration, and the location (the interview via Zoom and the test via internet). Alvarado has not complained about either the examiner or the parameters and modes of the interview or the test to be administrated. In fact, Alvarado's own counsel has reportedly worked with Mr. Taylor on numerous occasions, and is well acquainted with him. Nevertheless, Mr. Taylor's curriculum vitae and list of expert witness testimony, which demonstrates his qualification as an expert, are attached hereto. (**Exhibit H**, CV

and list of expert witness testimony of R. Taylor.) Acuity requests this Court require Alvarado to submit to the testing on one of the two dates provided in the Conclusion section below, so that this Court may provide the date in the Order compelling the examination as Rule 35 requires.

## IV.   CONCLUSION

For the reasons above, Defendant Acuity A Mutual Insurance Company respectfully requests this Court grant its Motion To Compel Rule 35 Examination of Plaintiff Estevan Alvarado-Herrera, and enter an order requiring:

1. Alvarado to attend a Rule 35 examination to be conducted by Acuity's vocational rehabilitation expert Robert Taylor, to be conducted  one of the following dates that Alvarado is available, with the Zoom interview to last approximately 2 hours, and, if deemed necessary, approximately 2.5 hours of vocational testing to be administered online to follow:

   a. Thursday September 27, 2022, at 9:00 am PST; or

   b. Thursday September 30, at 9:00 am PST.

2. Alvarado's expert, Ms. Hyland, to transmit to Mr. Taylor for his examination  and interpretation the raw data from the tests Ms. Hyland administered to Alvarado.

DATED this 7th day of September, 2022.

THE FELDMAN FIRM


By   */s/ David Feldman*
David J. Feldman, Esq.
Nevada Bar No. 5947
Rachel J. Holzer, Esq.
Nevada Bar No. 11604
8831 West Sahara Avenue
Las Vegas, Nevada 89117
Telephone:  (702) 949-5096
Facsimile:  (702) 949-5097
dfeldman@feldmanattorneys.com
rholzer@feldmanattorneys.com
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that I am employee of The Feldman Firm, and that on the 7th day of September, 2022, I served the above and foregoing **DEFENDANT ACUITY A MUTUAL INSURANCE COMPANY'S MOTION TO COMPEL RULE 35 EXAMINATION OF PLAINTIFF AND PRODUCTION OF RAW DATA FROM PRIOR EXAMINATION** on the following parties in compliance with the Nevada Electronic Filing and Conversion Rules:

Steven T. Jaffe, Esq.
Taylor R. Anderson, Esq.
**HALL JAFFE & CLAYTON, LLP**
7425 Peak Drive
Las Vegas, Nevada 89128
Telephone: (702) 316-4111
Facsimile: (702) 316-4114
Email:   sjaffe@lawhjc.com; tanderson@lawhjc.com

and

John P. Shannon, Esq.
Jason S. Cook, Esq.
**LAW OFFICE OF WILLIAM H. JACKSON, LLC**
3320 N. Buffalo Dr., Suite 202
Las Vegas, Nevada 89129
Telephone: (702) 489-3030
Facsimile: (702) 489-3033
Email: john@williamjacksonlaw.com; jason@williamjacksonlaw.com
*Attorneys for Plaintiff*

*/s/Heather Miller*
An Employee of THE FELDMAN FIRM